UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT URAIN SOLOMON,<br><br>    Plaintiff,<br><br>v.<br><br>SGT. MEYER, et al.,<br><br>    Defendants. | Case No. 11-cv-02827-JST (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; STAYING ACTION AND REFERRING FOR SETTLEMENT PROCEEDINGS; DIRECTIONS TO CLERK**<br><br>Re: Dkt. No. 102 |

    Plaintiff, a California prisoner proceeding pro se and currently incarcerated at California State Prison – Corcoran ("CSP–Corcoran"), filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights when he was incarcerated at Salinas Valley State Prison ("SVSP"). Specifically, plaintiff alleges that SVSP correctional officers moved him to Administrative Segregation ("Ad-Seg") based on false disciplinary charges, denied him the right to call witnesses at the hearing on said disciplinary charges (which resulted in a finding of guilt), forced him to stay in Ad-Seg even after he won an administrative appeal challenging the hearing, housed him with a known enemy in Ad-Seg, and eventually forced his transfer to the Security Housing Unit ("SHU") at the California Correctional Institution ("CCI"). Plaintiff also alleges that correctional officers placed him in Ad-Seg and eventually transferred him to the SHU in order to force plaintiff to drop his internal staff complaints. The Court found plaintiff had stated cognizable claims for due process violations, deliberate indifference to safety, and retaliation.

Now before the Court is defendants' motion for summary judgment. Plaintiff has not filed an opposition, and the deadline by which to do so has passed.

**DISCUSSION**

**I.   Standard of Review**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge). Here, plaintiff's verified second amended complaint ("SAC") is considered in opposition to the motion for summary judgment.

## II. Claims and Analysis

### A. Due Process Claim – Disciplinary Report

On April 16, 2009, plaintiff was charged with a disciplinary violation at SVSP for threatening staff. (Ippolito Decl. ¶ 2.) He received a Rules Violation Report ("RVR"). (Id.) Plaintiff claims that defendant Sergeant Meyer made the charges, knowing they were false. (SAC at 3, 5.[1]) The allegedly false disciplinary report is the only basis for plaintiff's claim against defendant Meyer.

The allegations, even if true, do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. "A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Chavira v. Rankin, 2012 WL 5914913, *1 (N.D. Cal. 2012) (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Id. (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)).

Accordingly, defendant Meyer is entitled to summary judgment.

---

[1] The page numbers used herein for the SAC refer to those affixed to the top of the page by the court's electronic filing program.

3

**B.     Retaliation – Placement in Ad-Seg and the SHU**

Plaintiff was moved to Ad-Seg on April 16, 2009 after he received the RVR for threatening staff. (SAC at 3, 5.) He claims that he was placed in Ad-Seg in retaliation for filing staff complaints. (SAC at 3.) On September 18, 2009, plaintiff was transferred to the SHU at CCI. (SAC at 5.) He claims that defendant Solis ordered the transfer as a form of retaliation after plaintiff refused to withdraw his staff complaints. (Id.)

Defendants submit declarations and documentary evidence showing the following: Plaintiff was housed in SVSP's Ad-Seg from April 16, 2009 to September 18, 2009. (Atchley Decl. ¶ 4.) Plaintiff was placed in Ad-Seg on April 16, 2009 for threatening staff. (Solis Decl. Ex. A.) SVSP conducted the RVR hearing on July 17, 2009, and plaintiff was found guilty of threatening staff. (Ippolito Decl. ¶ 3.)

On July 30, 2009, plaintiff appeared before the Institutional Classification Committee ("ICC") to determine what housing was appropriate for him. (Solis Decl. ¶ 7 & Ex. A.) The ICC intended to release plaintiff from Ad-Seg to general population. (Id.) However, plaintiff stated at the hearing that he would assault his cellmate if he were given double cell status. (Id.) At the hearing, the ICC noted plaintiff's "clear propensity towards disruptive conduct" based on his numerous prior RVRs, including two instances of Obstructing a Prison Official in the Performance of his/her Duties, two instances of Refusing a Direct Order, Battery on a Peace Officer, Delaying a Peace Officer, Possession of a Controlled Substance, Possession of Tobacco Products, and Disobeying Orders. (Id. Ex. A.) The ICC elected to retain plaintiff in Ad-Seg and issued a recommendation that he be reviewed for an indeterminate SHU program. (Id.)

A subsequent hearing was held on August 8, 2009 to decide whether plaintiff would receive a SHU term. (Solis Decl. ¶ 8 & Ex. B.) The ICC found that plaintiff was a disruptive inmate who threatened the safety of others, as well as the security of the prison, based on his previous RVRs, and recommended that he be transferred to a SHU. (Id.) On September 18, 2009, plaintiff was transferred to the SHU at CCI. (SAC at 5.) SVSP does not have a SHU. (Solis Decl. ¶ 9.)

Within the prison context, a viable claim of First Amendment retaliation entails five basic

4

elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The prisoner need not prove a total chilling of his First Amendment rights; "that his First Amendment rights were chilled, though not necessarily silenced, is enough." Rhodes, 408 F.3d at 569.

Liberally construed, the SAC contains two claims of retaliation. First, plaintiff claims that he was placed in Ad-Seg in retaliation for filing staff complaints. (SAC at 3.) Second, plaintiff claims that defendant Solis ordered the transfer to the SHU as a form of retaliation after plaintiff refused to withdraw his staff complaints. (Id.) The Court addresses each such claim in turn.

### 1.     **Placement in Ad-Seg**

Defendants have produced evidence sufficient to show they did not place plaintiff in Ad-Seg in retaliation for plaintiff's staff complaints. At the outset, the only staff complaint plaintiff identifies in his SAC is a complaint he filed against defendant Meyer and Correctional Officer Dornan after he was placed in Ad-Seg for making threats against staff. (SAC at 3.) Because plaintiff filed the staff complaint after he was placed in Ad-Seg, the staff complaint cannot be the reason for defendants' allegedly retaliatory act of placing plaintiff in Ad-Seg. The timing of the staff complaint alone precludes plaintiff from showing a causal connection.

Next defendants have shown that they did not place plaintiff in Ad-Seg because of plaintiff's protected conduct. The undisputed evidence shows that plaintiff was placed in Ad-Seg on April 16, 2009 based on charges that he threatened staff. (Solis Decl. Ex. A.) Title 15, section § 3335(a) of the California Code of Regulations permits placement in administrative segregation where the presence of an inmate in the general population poses a threat to safety and/or to an ongoing investigation of serious misconduct or criminal activity. Further, California has a compelling interest in prison security. See Greene v. Solano County Jail, 513 F.3d 982, 988 (9th Cir. 2008) (citing Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)). Courts are required to defer to the expertise of prison officials in matters of prison security. Cutter, 544 U.S. at 725 n.13. Plaintiff has not provided any evidence that defendants' actions did not reasonably advance the

5

legitimate correctional goal of prison security.

### 2. Transfer to the SHU

Defendants have produced sufficient evidence to show they did not transfer plaintiff to the SHU at CCI as a form of retaliation after plaintiff refused to withdraw his staff complaints. As discussed above, plaintiff's July 30, 2009 ICC planned on releasing plaintiff from Ad-Seg. But for plaintiff's threat to assault a cellmate if he was released to a double cell, plaintiff would have been released back to the general population. Based on plaintiff's disciplinary history and his July 30, 2009 threat, the ICC convened a subsequent hearing to decide whether plaintiff should be recommended for an indeterminate SHU term. Title 15, section 3341.5(c) of the California Code of Regulations provides, "an inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU." At the August 8, 2009 hearing, the ICC determined that plaintiff met the criteria for an indeterminate SHU term under section 3341.5(c). (Solis Decl. Ex. B.) "Good faith enforcement of governmental regulations is a defense to a section 1983 Civil Rights Act claim." Milton v. Nelson, 527 F.2d 1158, 1159-60 (9th Cir. 1975) (citation and internal quotes omitted). As also noted above, California has a compelling interest in prison security. See Greene, 513 F.3d at 988. Plaintiff fails to present evidence to counter defendants' showing that his transfer reasonably advanced a legitimate penological goal. Further, plaintiff also has failed to present any evidence that defendants transferred him to the SHU because of his protected conduct. Plaintiff presents nothing more than conclusory allegations in his SAC. In light of the absence on these essential elements, no reasonable jury could find in his favor on his retaliation claim.

Based on the above, the Court concludes the record has been adequately developed, and there is no evidence from which a reasonable trier of fact could conclude any defendant retaliated against plaintiff. Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim.[2]

---

[2] Because the Court grants summary judgment in favor of defendants on the merits on plaintiff's retaliation claim, it need not address defendants' alternative argument that the claim should be dismissed on the ground that plaintiff failed to exhaust administrative remedies.

### C. Deliberate Indifference to Safety

Plaintiff claims that when defendants moved him to the SVSP Ad-Seg, they housed him with a known enemy in Ad-Seg in deliberate indifference to plaintiff's safety. (SAC at 3, 6.) Plaintiff does not provide any additional information, such as the alleged enemy's name, inmate number, or the location of the alleged enemy's cell. (See id.) Nor does plaintiff claim in his SAC that he was attacked or otherwise harmed by an alleged enemy while he was housed in Ad-Seg. (See id.)

Defendants submit declarations and documentary evidence showing the following: Before any housing assignment is made for an inmate at SVSP, the inmate's enemies list is reviewed to ensure that the inmate is not housed with an enemy. (Solis Decl. ¶ 2.) Before making plaintiff's housing assignment, prison officials reviewed his enemies list to ensure he was not housed with an enemy. (Atchley Decl. ¶ 3.) Defendants were not aware of any documented enemy housed on the same yard as plaintiff. (Atchley Decl. ¶ 7; Ippolito Decl. ¶ 6; Oyarzabal Decl. ¶ 3; Solis Decl. ¶ 5.) Plaintiff never told any defendant that there was an enemy in his yard, and he never asked any defendant to move him to another housing unit. (Atchley Decl. ¶ 8; Ippolito Decl. ¶ 7; Oyarzabal Decl. ¶ 4; Solis Decl. ¶ 6.)

Moreover, even if one of plaintiff's enemies were housed in Ad-Seg, that would not have presented a serious threat to plaintiff's safety. (Atchley Decl. ¶ 5; Solis Decl. ¶¶ 3, 4.) The Ad-Seg unit is the most secure unit at SVSP. (Id.) Whenever an inmate in Ad-Seg leaves his cell, he is placed in restraints and escorted by two correctional officers. (Id.) Further, inmates in Ad-Seg exercise in small-management yards either by themselves or with their compatible cellmates. (Solis Decl. ¶ 4.) While plaintiff was in Ad-Seg, he was single-celled and assigned to a walk-alone yard for exercise. (Id.)

The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of prisoners. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have an affirmative duty to protect inmates from violence at the hands of other inmates. See id. at 833. The failure of a prison official to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment only when two

7

requirements are met:  (1) the objective component – the deprivation alleged must be sufficiently serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); and (2) the subjective component – the prison official must possess a sufficiently culpable state of mind.  See id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  Id. at 834 (citing Wilson, 501 U.S. at 298).  With respect to the subjective component, the requisite state of mind depends on the nature of the claim.  In prison-conditions cases, the necessary state of mind is one of "deliberate indifference."  See, e.g., Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of confinement).

A prison official cannot be held liable under the Eighth Amendment for failing to guarantee the safety of a prisoner unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety.  See Farmer, 511 U.S. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  See id.

Deliberate indifference describes a more blameworthy state of mind than negligence.  See Farmer, 511 U.S. at 835 (citing Estelle, 429 U.S. at 104).  Negligence is not enough to amount to an Eighth Amendment violation.  Farmer, 511 U.S. at 835.  Deliberate indifference is not shown by merely stating that a defendant should have known of a risk, but requires an actual perception of a risk that does not exist merely because a reasonable person should have perceived a risk.  Id. at 836.

### 1. Objective Component

The Court finds plaintiff's claim fails at the first step – the objective component – because plaintiff has not alleged facts or provided evidence to show a "sufficiently serious" deprivation. Farmer, 511 U.S. at 834.  At most, plaintiff has raised a dispute as to whether one of his enemies was housed somewhere in SVSP's Ad-Seg unit at the same time plaintiff was housed there.

Plaintiff has failed, however, to produce evidence showing this presented a dangerous condition. As noted above, plaintiff does not provide the name of the alleged enemy and does not claim that he was ever attacked by the alleged enemy. Indeed, defendants have produced sufficient evidence showing that, even if it were true that an enemy of plaintiff was housed somewhere in Ad-Seg, plaintiff's safety would not have been compromised given the security protocols of SVSP's Ad-Seg. The undisputed evidence shows that: (1) plaintiff was single-celled and assigned to a walk-alone yard for exercise in Ad-Seg; and (2) he had two correctional guards escorting him every time he left his cell.

On this record, plaintiff fails to demonstrate a disputed issue of fact concerning an objectively, sufficiently serious deprivation. Without a showing to satisfy the objective prong of the deliberate indifference analysis, plaintiff cannot withstand summary judgment on his failure-to-protect claim.

### 2. Subjective Component

Even assuming that the first, objective, component were met, plaintiff has nevertheless failed to show that any defendant knew of and disregarded an excessive risk to his health or safety. The undisputed facts show that defendants checked plaintiff's enemies list before moving him to Ad-Seg and determined that there were no documented enemies housed on the same yard as plaintiff. Defendants have also shown that plaintiff never told them there was an enemy on his yard and never asked to be moved to another housing unit. Plaintiff has failed to come forward with any evidence to refute defendants' evidence. Thus, even accepting as true that an enemy of plaintiff's was housed in Ad-Seg, defendants were not faced with a situation where a risk of substantial harm was obvious.

On the facts adduced, the Court cannot conclude that defendants acted with negligence, let alone the criminal recklessness required to sustain plaintiff's claim. Accordingly, the Court finds that plaintiff has failed to raise a triable issue of fact as to whether defendants acted with deliberate indifference under the subjective prong of Farmer. 511 U.S. at 834.

Based on the above, the Court concludes the record has been adequately developed, and there is no evidence from which a reasonable trier of fact could conclude any defendant acted in

9

deliberate indifference to plaintiff's safety. Accordingly, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

### D.     Due Process – Disciplinary Hearing

Plaintiff claims that defendants Atchley and Ippolito denied him his due process rights at his July 17, 2009 disciplinary hearing when they denied plaintiff the opportunity to call witnesses in his defense. (SAC at 6.) Specifically, plaintiff alleges as follows:

> Lt. Atchley and Lt. J. Ippolito continued to violate my due process by denying me a fair lock up hearing and a fair 115 write up hearing. They refused to allow me witnesses or take consedation [sic] of my witnesses as a true [sic], when my eyewitnesses was there [sic] and they works [sic] for CDCR too; I was found guilty with no evidence and not allowed to present evidence or witnesses; I won on direct appeal and the 115 write up was ordered dismiss[ed], re-issued, and reheard.

(SAC at 6.)

Defendants submit declarations and documentary evidence showing the following: Plaintiff was moved to Ad-Seg on April 16, 2009, while an investigation was conducted into the RVR for threatening staff. (Solis Decl. Ex. A.) SVSP conducted the RVR hearing on July 17, 2009, and plaintiff was found guilty of threatening staff. (Ippolito Decl. ¶ 3.) Plaintiff was not assessed any loss of good time credits because CDCR time constraints were not met. (Defs.' Req. Jud. Not. Ex. B.)[3] Plaintiff appealed the guilty finding. (Id.) On August 27, 2009, at the second level of review, the reviewer granted the appeal. (Id.) The reviewer noted that plaintiff "did not request any evidence prior to or during the hearing." (Id.) The reviewer also found, however, that plaintiff requested three witnesses at the hearing, and that the Senior Hearing Officer ("SHO") denied the request and failed to document the reason for the denial as required by Title 15, section 3315(e)(2) of the California Code of Regulations. (Id.) The reviewer ordered the RVR reissued and reheard. (Id.) On September 24, 2009, the disciplinary charge and guilty finding were removed from plaintiff's file and replaced with a non-disciplinary "counseling chrono." (Ippolito Decl. ¶ 5 & Ex. B.) A "counseling chrono" is a memorandum that details the incident but does not carry any punishment. (Id.)

---

[3] Good cause appearing, and no objection having been filed thereto, defendants' Request for Judicial Notice (Dkt. 106) is GRANTED.

Defendants do not address whether the RVR was ever reissued and reheard. Plaintiff asserts that it was not. (SAC at 6.)

Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply. See id. But the Due Process Clause requires certain minimum procedural protections where serious rules violations are alleged, the power of prison officials to impose sanctions is narrowly restricted by state statute or regulations, and the sanctions are severe. See id. at 556-57, 571-72 n.19.

Wolff established five constitutionally-mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Id. at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." Id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

The Due Process Clause requires only that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that prisons comply with their own, more generous procedures. See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995). A prisoner's right to due process is violated "only if he [is] not provided with process sufficient to meet the Wolff

11

standard." Id.

Unfortunately, the Wolff procedures were not followed at plaintiff's hearing. The evidence shows that plaintiff was denied the right to call witnesses in his defense, in violation of Wolff. Defendants claim, however, that any error was cured by plaintiff's administrative appeal. Specifically, defendants point out that plaintiff appealed the guilty finding and that the appeal was granted at the second level of review. Defendants claim that the administrative appeals process cured any violation of plaintiff's due process rights.

The Court disagrees. Violation of procedural due process rights requires only procedural correction and not a reinstatement of the substantive right. See Raditch v. United States, 929 F.2d 478, 481 (9th Cir. 1991). In section 1983 cases, a plaintiff can recover compensatory damages for a proven due process violation only if the deprivation of the substantive right was unjustified on the merits. If, on the other hand, it is determined after post-deprivation procedures that the deprivation was justified, a plaintiff can recover only nominal damages for the due process violation. See id. at 481 n.5 (citing Carey v. Piphus, 435 U.S. 247, 266-67 (1978); Vanelli v. Reynolds School Dist. No. 7, 667 F.2d 773, 781 (9th Cir. 1982)). In other words, the remedy for an unfair hearing is another hearing. If plaintiff is provided with a rehearing and is again found guilty, there can be no showing that the deprivation was unjustified on the merits and plaintiff is limited to nominal damages. If, on the other hand, a rehearing is held and plaintiff prevails, he may be entitled to compensatory damages.

Here, due process was partly satisfied when the results of the disciplinary hearing were vacated and the RVR was ordered reissued and reheard. There is nothing in the record, however, showing that plaintiff was ever given a second hearing. As such, there is a triable issue of fact as to whether the deprivation was justified.

The Court notes that even if the deprivation was unjustified, plaintiff may nonetheless be limited to nominal damages. Specifically, as noted above, plaintiff was not assessed any credit loss as a result of the RVR. Further, while he was placed in Ad-Seg as a result of the RVR, this does not amount to a due process violation. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (mere placement in administrative segregation pending a disciplinary hearing not enough to

12

state claim); Chavira v. Rankin, 2012 WL 5914913, *1 (N.D. Cal. 2012) ("[T]he fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue."). Plaintiff has not alleged facts or presented evidence showing he suffered a compensable deprivation. The record is not sufficiently developed, however, for the Court to say there is no basis on which plaintiff may seek compensatory damages. See e.g., Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (transfer and confinement in SHU after a disciplinary hearing sentence has been ordered reissued and reheard may constitute an atypical and significant hardship, thus infringing upon a protected liberty interest).

Defendants contend they nonetheless are entitled to judgment, based on qualified immunity. Qualified immunity protects government officials from civil liability for actions taken within their official discretion insofar as those actions do not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is not merely a defense to liability; rather, when applicable, qualified immunity protects government officials from lawsuits and, hence, from the burdens of litigation. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009).

A court considering a claim of qualified immunity must determine: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right; and (2) whether such right was clearly established such that it would be clear to a reasonable actor that his conduct was unlawful in the situation that confronted him. See Pearson, 555 U.S. at 236. Courts may exercise their discretion in deciding which prong of the test to address first, in light of the particular circumstances of the case. Id. (overruling prior authority under which courts were required to determine issue of deprivation before reaching issue of whether right clearly established).

Here, as discussed, a prisoner's right to call witnesses in a disciplinary proceeding was explicitly established in Wolff which was decided in 1974, approximately thirty-five years prior to plaintiff's disciplinary hearing. Based on the record presently before the Court, it cannot be said that, as a matter of law, it was objectively reasonable for defendant hearing officers Atchley and

13

1  Ippolito to believe it was lawful to deprive plaintiff the opportunity to present witnesses in his
2  defense.
3      Accordingly, defendants Atchley and Ippolito are not entitled to summary judgment on
4  plaintiff's procedural due process claim, arising from the July 17, 2009 disciplinary hearing.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendants' motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART as follows:

    a. Summary judgment is GRANTED in favor of defendants Meyer, Oyarzabal, and Solis on all claims.

    b. Summary judgment is GRANTED in favor of defendants Atchley and Ippolito on plaintiff's claims for: (1) retaliation, and (2) deliberate indifference to safety.

    c. Summary judgment is DENIED with respect to plaintiff's claim of due process violations occurring at the July 17, 2009 disciplinary hearing as against defendants Atchley and Ippolito.

2. The case is hereby REFERRED to Magistrate Judge Nandor Vadas for settlement proceedings. Such proceedings shall take place within 120 days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, shall file with the Court a report thereon.

The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the court file can be retrieved from the court's electronic filing database (ECF).

3. The Clerk is further directed to: (1) terminate Meyer, Oyarzabal, and Solis as defendants on the court docket; and (2) correct the spelling of the names of defendants Meyer, Oyarzabal on the docket by substituting "Meyer" for "Moyer" and by substituting "Oyarzabal" for

"Dyarzabal."

4. In view of the referral, further proceedings in this case are hereby STAYED. If the case is not settled, the Court will enter a new scheduling order for further proceedings.

This order terminates Docket No. 102.

**IT IS SO ORDERED.**

Dated: January 26, 2014



_____
JON S. TIGAR
United States District Judge